IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 17–cv–00239–KMT

DANIEL LEYBA,

    Plaintiff,

v.

CORRECTIONAL OFFICER DANIEL STROM, in his individual capacity, and
LIEUTENANT RONALD ARMSTRONG, in his individual capacity,

    Defendants.

---

# ORDER

---

This case comes before the court on the following motions:

    1. "Motion for Summary Judgment by Defendant Ronald Armstrong" (Doc. No. 56 [Armstrong Mot.], filed October 30, 2018), to which Plaintiff filed a response (Doc. No. 71 [Resp. Armstrong Mot.], filed January 12, 2019) and Defendant Armstrong filed a reply (Doc. No. 77 [Armstrong Reply]); and

    2. "Motion for Summary Judgment by Defendant Daniel Strom" (Doc. No. 65 [Strom Mot.], filed November 20, 2018), to which Plaintiff filed a response (Doc. No. 72 [Resp. Strom Mot.], filed January 12, 2019). Defendant Strom did not file reply.

**STATEMENT OF THE CASE**

Plaintiff Daniel Leyba alleges two Eighth Amendment claims under 42 U.S.C. § 1983. (Doc. No. 1 [Compl..])  Plaintiff's First Claim for Relief is a claim for "Excessive Force, Cruel & Unusual Punishment" against Correctional Officer Defendant Daniel Strom only, based on Plaintiff's allegation that on January 27, 2015, while he was an inmate at the Buena Vista Correctional Complex ("BVCC") of the Colorado Department of Corrections ("CDOC"), he was assaulted by Defendant Strom.  (*Id.* at 13–15.)  Plaintiff's Second Claim for Relief is a claim for "Failure to Train, Failure to Supervise, Failure to Investigate, Policies/Customs/Practices Causing Violation" against Defendant Armstrong as Defendant Strom's supervisor.  (*Id.* at 16–20.)[1]

**UNDISPUTED FACTS**

On January 27, 2015, in the inmate medication line at Buena Vista Correctional Complex ("BVCC"), where Plaintiff is incarcerated within the Colorado Department of Corrections ("CDOC"), Plaintiff was hit by Defendant Strom at the top of the right kneecap area. (*See*

---

[1] In describing the nature of his claims in the Complaint, Plaintiff states, "Lieutenant Armstrong . . . [is] sued for [his] deliberate indifference to Plaintiff's safety, well-being and physical health when [he] participated and assisted in having Mr. Leyba stuck in segregation for several days in an effort to demoralize him and preclude him from being able to document the assault, his wrongful placement in administrative segregation, his injuries, and DOC's continued wrongful refusal to provide him with medical treatment for his injuries." (Compl., ¶ 3.)  Unlike for a *pro se* plaintiff, the court is not required to liberally construe a represented party's pleadings. *See Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir.1997) (federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers.").  Moreover, even for a *pro se* plaintiff, "courts may not rewrite a complaint to include claims that were never presented, nor may courts construct the plaintiff's legal arguments for him." *Fick v. US Bank Nat. Ass'n*, No. 11-CV-03184-WYD-KLM, 2012 WL 5464592, at *4 (D. Colo. Sept. 10, 2012), *report and recommendation adopted sub nom. Fick v. US Bank Nat. Assoc.*, No. 11-CV-03184-WYD-KLM, 2012 WL 5464614 (D. Colo. Nov. 8, 2012).  Plaintiff has not explicity stated a claim for relief related to these allegations against Defendant Armstrong, and the court declines to rewrite Plaintiff's complaint.

Armstrong Mot., Ex. B (Leyba Dep.) at 16:17–18:3, 11:16–12:1; and Ex. E (videos of incident and the medication line).) Previously, on January 5, 2015, Plaintiff was injured while playing basketball, and was diagnosed on January 16, 2015, with a meniscus tear, which caused pain and made it difficult to walk. (Ex. B at 9:11–11:10, 113:17–114:19.)

During the January 27, 2015 incident, Defendant Strom's hit caused Plaintiff to stumble backwards, but Plaintiff did not fall down, and he was able to walk or "hobble off." (Ex. E; Ex. B, at 22:2–8.) Plaintiff testified that Defendant Strom's hit caused pain at a 6 or 7 level on a ten-point scale, although Investigator William Flint from the CDOC Inspector General's Office reported that Plaintiff said in February 2015 his pain was a 4 on the ten-point scale. (Ex. B at 20:11–25, 64:25–65:10; Ex. M (Inspector General Report), at Bates No. 1567.) Plaintiff testified that Defendant Strom's hit left a bruise on the top of the knee cap the size of a "knuckle" that lasted for one and one-half weeks. (Ex. B at 18:1–9, 21:1–16.)

After he had been hit by Defendant Strom, Plaintiff did not speak to the nurse who was present at the medication line about being hit and needing treatment. (*Id*. at 22:25–23:2.) He did not request medical service via kite until he was put into a segregation cell the next day. (*Id*. at 41:7–25, 77:3–14.) Plaintiff testified he had trouble walking[2] after being hit, but walked to his living unit and upstairs to his cell on the second tier. (*Id*. at 23:10–21.) Plaintiff walked down the stairs that evening to participate in the canteen, walked back up the stairs, and walked back down the stairs the next morning so he could work in the kitchen. (*Id*. at 28:9–29:10, 40:18–41:4.)

---

[2] Plaintiff disputes this fact and states that his injured knee caused him to "limp" and "hobble." (Resp. Armstrong Mot., ¶ 9.) However, Plaintiff did not use the words "limp" or "hobble" in these portions of his deposition.

Defendant Strom had been employed since about May 2013 as a Correctional Officer I working in the East Unit at BVCC, under supervision of two Sergeants and Defendant Lt. Armstrong. (Ex. D (Strom Dep.), at 10:4–5, 13:1–6; Ex. A (Armstrong Decl., ¶¶ 2–4).) Alison Swegart was a Correctional Officer I at BVCC from January 2012 until June 2015. (Ex. C (Swegart Dep.), at 5:13–6:20.) She worked with Defendant Strom and the other supervisors, including Defendant Armstrong, on the swing shift. (*Id*. at 8:24–10:12, 11:13–12:17.)

Officer Swegart was supervising the medication line with Defendant Strom when she saw him strike Plaintiff in his right leg, "kind of where his knee was." (*Id*. at 51:24–52:8.) She testified that Plaintiff's reaction was his leg buckled "a little bit" but he did not fall down, and he asked Officer Swegart if she saw the punch; she could not remember whether Plaintiff appeared to be in pain or cried out. (*Id.* at 52:22–53:19, 84:9–15.) Officer Swegart testified the "next" thing that happened was that she left the medication line area and went upstairs to Defendant Armstrong and "made him pull up the cameras" so he could see "what had just happened," so she was not able to see Plaintiff walk out of the room. (*Id*. at 53:20–54:14, 59:1–7, 66:22–67:14, 84:16–85:6.) When Officer Swegart reported to Armstrong, he was eager to see the video. (*Id.* at 54:20–55:20.)

Defendant Armstrong left BVCC just after 7:00 p.m. on January 27, 2015, and began his medical leave for open heart surgery in February. He did not work for BVCC again until his leave ended on March 23, 2015. He never saw or spoke to Defendant Strom or Plaintiff again. (Ex. A, ¶ 8; Exs. K and L (Armstrong time and medical records).) Plaintiff was moved to a segregation cell at about 11:15 a.m. on January 28, 2015, and walked downstairs and 300 feet to get there. (Ex. B at 43:11–44:17.)

Plaintiff was moved to Cellhouse 5 at the Colorado Territorial Correctional Facility ("CTCF") on January 30, 2015, and to Arkansas Valley Correctional Facility ("AVCF") on March 2, 2015. (*Id*. at 52:5–24, 37:2–4.) Plaintiff testified that he filled out kites requesting treatment for an injury from Defendant Strom at BVCC on January 28, 2015, and at CTCF in February 2015. (*Id*. at 41:5–15, 52:25–53:13.) CDOC medical records indicate that Plaintiff failed to appear for a medical appointment at CTCF on February 19, 2015 (Ex. N (Select Medical Records), at Bates No. 217), did not inform the AVCF intake nurse about the alleged injury by Defendant Strom (but did tell her about the basketball injury) (Ex. B at 123:4–124:10; Ex. N at Bates No. 230), never told AVCF medical staff that he had an injury from Defendant Strom (Ex. B, at 126:10–13), and attended medical appointments in March through May 2015 at AVCF for other problems but did not raise the alleged injury by Defendant Strom. (*Id*. at 124:25–129:10; Ex. N at Bates Nos. 239, 253, 251, and 264.)

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P.

5

56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

### A. *Excessive Force*

"[A]n excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a

sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotation marks and citation omitted).

In their motions, Defendants, citing *Marshall v. Milyard*, 415 F. App'x 850 (10th Cir. 2011), address only the objective prong of Plaintiff's excessive force claim.[3]

The Tenth Circuit summarized the plaintiff's claims in *Marshall* as follows:

> Lieutenant Bade approached [the plaintiff, Mr. Marshall,] at the shower on June 11, 2007, and told him to lock down in his cell. When he asked why he needed to lock down, Lieutenant Bade replied that he was not sure. Mr. Marshall retorted that "per the Co[d]e of Penal Disciplinary Book your order must give notice and it must be reasonable in nature." Lieutenant Bade replied, "I don't care[. G]o lock down." As Mr. Marshall began walking toward his cell to lock down, Lieutenant Bade grabbed his upper right arm. He turned and told Lieutenant Bade, "[D]o not put your hands on me." Lieutenant Bade then ordered him to "turn around and cuff up." Mr. Marshall did not resist being handcuffed but remarked, "[A]ll you had to do was ask me first before you put your hands on me for no reason. I was walking to the cell to lock down." Lieutenant Bade and another officer then escorted Mr. Marshall about 1,200 feet to see Captain M. Negley, the shift commander, with Lieutenant Bade holding Mr. Marshall's right arm and the other officer holding his left arm. As they were walking, Lieutenant Bade put his fingernails deep into Mr. Marshall's right arm. Lieutenant Bade injured him, as documented by a prison medical form attached to his amended complaint. That form, dated June 11, 2007, indicated that he had a three-by-four-centimeter bruise on the inside of his upper right arm and a four-by-five-centimeter red area on the outside of that arm.

*Id.* at 851 (alterations, other than first alteration, in original) (internal citations omitted). The Court affirmed the District Court's dismissal of the plaintiff's excessive force claim pursuant to Federal Rule of Procedure 12(b)(6), stating,

> An action by a prison guard may be malevolent, yet not amount to cruel and unusual punishment. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). As the Court made clear in *Hudson*, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's Constitutional rights." *Id.* (internal quotation marks omitted). Thus, even if a use

---

[3] Defendant Strom's motion is copied, nearly word-for-word, from Defendant Armstrong's motion.

> of force is deemed unnecessary after the fact, if it was both de minimis and "not of a sort repugant to the conscience of mankind," it will not sustain an excessive force claim . . . .

*Id.* at 852–53. The Court relied upon *Norton v. City of Marietta*, 432 F.3d 1143, 1156 (10th Cir. 2005) (allegations that guards injured a prisoner "by grabbing him around the neck and twisting it" were not objectively harmful enough to establish a constitutional violation), and cases from other circuit courts. *Id.* at 853.

Since *Marshall*, the Tenth Circuit also affirmed the dismissal of a plaintiff's excessive force claim in *Rhoten v. Werholtz*, 243 F. App'x 364 (10th Cir. 2016), where a plaintiff alleged that, during a pat down search, an officer "slammed [him] against the wall[,] squeezed [his] nipples real hard, squeezed [his] buttocks, and pulled on [his] testicles real hard, causing him a great deal of discomfort and pain," and then denied him a pass to seek medical treatment. *Id.* at 365. The Court held the officer's use of force was de minimis. *Id.* at 365, 367 (alterations in original).

Here, the undisputed evidence shows that, on January 27, 2015, Defendant Strom struck Plaintiff once at about the top of the kneecap. (Armstrong Mot., Ex. B at 18:1–3, 15–17; Ex. E.) The contact caused Plaintiff to stumble backwards, but he did not fall down. (*Id.*, Ex. B at 22:2–5; Ex. E.) Officer Swegart testified that the hit caused Plaintiff's leg to buckle "a little bit" but he was able to speak to her, and she did not remember him crying out or appearing to be in pain. (*Id.*, Ex. C at 52:22–53:19. 84:9–15; Ex. E.) Based on this undisputed evidence, the court finds, just as in *Marshall* and *Rhoten*, that Defendant Strom's use of force was de minimis.

Moreover, the court notes that, while the "Eighth Amendment does not require a showing of 'significant injury' in the excessive-force context," *Hudson*, 503 U.S. at 14, the extent of a

plaintiff's injury "may . . . provide some indication of the amount of force applied," *Wilkins v. Gaddy*, 559 U.S. 34, 37.  In *Marshall*, the Court determined that evidence showing only areas of redness and bruising further supported the Court's ruling conclusion that the defendant used only de minimis force.  *Marshall*, 415 F. App'x at 853 (citing other cases that relied, in part, prisoners' minor injuries in concluding force was de minimis).

Here, the undisputed evidence shows that Defendant Strom's hit left a bruise on the top of Plaintiff's knee cap the size of a "knuckle" that lasted for a week and a half.  (Armstrong Mot., Ex. B at 18:1–9, 21:1–16.)  Plaintiff claimed the hit made him "hobble."  (*Id.* at 22:6–8.)  However, Plaintiff testified he was in the medication line in the first place "because [his] knee was pretty swollen, and [he] could barely walk on it."  (*Id.* at 9:21–23.)  In any event, Plaintiff walked from the area (*id.*, Ex. E), and he testified that, for the eighteen hours after Defendant Strom hit him, he walked repeatedly, including multiple trips up and down stairs, and 300 feet to the segregation cell.  (*Id.*, Ex. B at 23:10–21; 28:9–29:10; 43:11–44:17.)  Plaintiff did not ask for treatment from the nurse who was present in the medication area at the time, and he did not request medical treatment by a kite until the next day after he was moved to a segregation cell.  (*Id.* at 22:25–23:3; 41:7–24; 77:3–14.)  Moreover, Plaintiff claims that he submitted kites to request medical treatment at BVCC and, after his January 30 transfer, at CTCF; however, CDOC medical records indicate that Plaintiff failed to appear for a medical appointment at CTCF on February 19, 2015. (*Id.* at 52:5–24; 37:2–4; 41:5–15; 52:25–53:13; Ex. N at Bates No. 217.)  Further, Plaintiff admitted that he told no one at AVCF (after his March 2, 2015, transfer) about his alleged injury from Defendant Strom, not even the intake nurse whom he told about his January 5 basketball injury, even though he saw medical personnel at AVCF numerous times to

9

treat other conditions. (*Id.* at 123:4–124:10; 126:10–13; 124:25–129:10; Ex. N at Bates Nos. 230, 239, 253, 251, 264.)

The undisputed evidence, which shows that Defendant Strom's hit to Plaintiff's knee caused little or no injury, is further support that the force used by Defendant Strom's was de minimis and not objectively harmful enough to rise to the level of cruel and unusual punishment under the Eighth Amendment. *See Marshall*, 415 F. App'x at 853 (medical form showing only areas of redness and bruising supported conclusion that force used was de minimis).[4]

Plaintiff has failed to meet his burden of demonstrating a genuine issue for trial on his Excessive Force claim, *Concrete Works, Inc.*, 36 F.3d at 1518, and Defendant Strom is entitled to summary judgment.

## B. Failure to Train, Supervise, Investigate

Plaintiff attempts to impose liability on Defendant Armstrong in his position as Defendant Strom's supervisor for failure "to train and supervise correctional officers and medical staff to ensure the safety and well-being of prisoners such as Plaintiff" and for failure "to appropriately screen out patently inappropriate correctional officer hires." (Compl., ¶ 56.)

Because personal participation is an essential element, Plaintiff must show that each named Defendant personally caused the deprivation of a federal right. *See, e.g., Kentucky v.*

---

[4] In his responses, Plaintiff argues that the cases cited by the defendants in support of their motions to dismiss the excessive force claim are distinguishable because they involve prison guards who used force while engaged in a proper penological activity such as restoring order, while Defendant Strom was not so engaged, thus making his force excessive. (Resp. Armstrong Mot and Resp. Strom Mot. at 13-17.) However, Plaintiff confuses the separate subjective and objective prongs of an excessive force claim, and Defendants challenge only the objective prong. *See Graham v. Sheriff of Logan Cnty.*, 741 F. 3d 1118, 1123 (10th Cir. 2013) (explaining that a plaintiff must show under the subjective prong that the official acted with a sufficiently culpable state of mind, which turns on whether he acted "maliciously and sadistically" to cause harm, including acting without a "penological purpose.")

*Graham*, 473 U.S. 159, 166 (1985). A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his or her conduct and the described violation. *Stidham v. Peace Officer Stds & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001). Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for constitutional violations committed by his subordinates. *Serna v. Colo. Dep't of Corr.*, 455, F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.").

However, a defendant in a supervisory position may be personally involved in an alleged constitutional violation committed by his or her subordinates in two situations. First, supervisor liability may arise when the supervisor was personally involved in directing the subordinates to take the action that resulted in the alleged constitutional violation. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992). Second, supervisor liability may arise when the supervisor had actual knowledge that the subordinates were committing the alleged constitutional violation and acquiesced in its commission. *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")).

Under the second situation liability can be imposed upon a "defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy[,] the enforcement (by the defendant-supervisor or [his] subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

When an official is sued under § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must demonstrate not only that a subordinate employee violated his rights but that the supervising official "by virtue of his own conduct and state of mind did so as well." *Id.* at 1197 (citing *Iqbal*, 556 U.S. at 662).

Here, Plaintiff has failed to demonstrate that Defendant Strom violated his Eighth Amendment rights by using excessive force. Therefore, his claim against Defendant Armstrong in his position as Defendant Strom's supervisor also must fail, *id.*, and Defendant Armstrong is granted summary judgment on the claim.

### C. *Qualified Immunity*

Finally, Defendant Armstrong asserts he is entitled to qualified immunity.[5] Qualified immunity is an affirmative defense against § 1983 damage claims available to public officials sued in their individual capacities. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine protects officials from civil liability for conduct that does not violate clearly established rights of which a reasonable person would have known. *Id.* As a government official at the time the alleged wrongful acts occurred, being sued in his individual capacity, Defendant Armstrong is entitled to invoke a qualified immunity defense to Plaintiff's claims. *See id.* at 231; *Johnson v. Jones*, 515 U.S. 304, 307 (1995) (noting that police officers were "government officials— entitled to assert a qualified immunity defense"). In resolving a motion to dismiss based on qualified immunity, a court looks at: "[1] whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and [2] whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colo. Springs*, 643 F.3d

---

[5] Defendant Strom does not raise qualified immunity in his motion.

719, 732 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232) (internal quotations omitted). Once a defendant invokes qualified immunity, the burden to prove both parts of this test rests with the plaintiff, and the court must grant the defendant qualified immunity if the plaintiff fails to satisfy either part. *Dodds*, 614 F.3d at 1191. Where no constitutional right has been violated "no further inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

Because Plaintiff has not established that Defendant Armstrong's actions violated a constitutional Defendant Armstrong is entitled to qualified immunity. *Leverington*, 643 F.3d at 732; *Dodds*, 614 F.3d at 1191.

**WHEREFORE**, for the foregoing reasons, it is

**ORDERED** that the "Motion for Summary Judgment by Defendant Ronald Armstrong" (Doc. No. 56) and the "Motion for Summary Judgment by Defendant Daniel Strom" (Doc. No. 65) are **GRANTED**; it is further

**ORDERED** that judgment shall enter in favor of the defendants and against the plaintiff on all claims for relief and causes of action asserted in this case. It is further

**ORDERED** that the defendants are awarded their costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and C.COLO.LCivR 54.1.

Dated this 13th day of September, 2019.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge